UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CHERYL A. FRAZIER, as trustee for the next of kin of Leneal Lamont Frazier, deceased,

        Plaintiff,

v.

CITY OF MINNEAPOLIS,

        Defendant.

Case No. 24-CV-2259 (PJS/DLM)

ORDER

---

    Jeffrey S. Storms and Naomi Martin, STORMS DWORAK LLC, for plaintiff.

    Sara J. Lathrop, Tracey N. Fussy, and Kristin R. Sarff, MINNEAPOLIS CITY ATTORNEY'S OFFICE, for defendant.

Plaintiff Cheryl A. Frazier ("Frazier") brought this § 1983 and wrongful-death action in her capacity as trustee for the next-of-kin of Leneal Frazier ("Leneal"), who was tragically killed by a police officer engaged in a high-speed chase. The matter is before the Court on defendant City of Minneapolis's ("City's") motion for judgment on the pleadings. For the following reasons, the motion is granted.

## I. BACKGROUND

Just after midnight on July 6, 2021, Minneapolis Police Officer Brian Cummings was on duty in his patrol vehicle in Minneapolis. Compl. ¶¶ 62, 158–59, ECF No. 1. Cummings drove past a Kia, which then pulled out of a parking lot and turned away

from Cummings. Compl. ¶¶ 63–66. Cummings made a U-Turn and followed the Kia. Compl. ¶ 65. As the Kia turned left at an intersection, Cummings turned on his emergency lights and siren. Compl. ¶¶ 66–67. The Kia did not stop, but instead increased its speed and attempted to flee from Cummings. *See* Compl. ¶¶ 78–83, 90.

Cummings pursued the Kia into a predominantly black residential neighborhood. Compl. ¶¶ 75–77. The Kia and Cummings repeatedly blew through stop signs in the neighborhood at speeds of more than three times the posted limit. Compl. ¶¶ 78–81. The pursuit continued into another neighborhood that was disproportionately black—i.e., where the percentage of black residents was greater than the percentage of black residents in Minneapolis as a whole. Compl. ¶ 90. At times reaching 100 miles per hour on residential streets, the Kia and Cummings nearly struck multiple vehicles, bicyclists, and pedestrians as they raced through stop signs, red lights, and crosswalks. Compl. ¶¶ 91–105.

About three miles into his pursuit of the Kia, Cummings sped through a red light at 89 miles per hour and T-boned a car driven by Leneal, who was lawfully crossing the intersection with the green light. Compl. ¶¶ 106–17. Leneal's car flew 75 feet and landed against a tree. Compl. ¶¶ 118–19. Leneal suffered severe injuries from the collision and died about an hour later. Compl. ¶¶ 124–130, 149–60.

Cummings was ultimately convicted of felony criminal vehicular homicide. Compl. ¶ 167. Frazier brought this lawsuit on behalf of Leneal's next of kin against the City (but not Cummings), alleging that the City is liable for Cummings's acts. Frazier contends that the City is liable because the Minneapolis Police Department ("MPD") had a practice of engaging in unlawful high-speed pursuits of suspects in disproportionately black neighborhoods.

## II. ANALYSIS

### A. Standard of Review

In ruling on a motion for judgment on the pleadings, a court must accept as true all of the factual allegations in the complaint[1] and draw all reasonable inferences in the non-movant's favor. *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

---

[1]The Court may also consider materials necessarily embraced by the pleadings (including exhibits attached to the complaint and matters of public record) without converting a motion for judgment on the pleadings into a motion for summary judgment. *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760–61 (8th Cir. 2021). The City has attached several exhibits to its answer, but the Court has not considered those exhibits in ruling on the City's motion.

### B.  Substantive Due Process

The City argues that Frazier has failed to plausibly allege that Cummings deprived Leneal of substantive due process.  Without an underlying constitutional violation, Frazier cannot state a viable claim for *Monell*[2] or *Canton*[3] liability.  *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (stating that in order for municipal liability to attach to a policy-or-custom claim, there must be an underlying constitutional violation); *Braun v. Burke*, 983 F.3d 999, 1003 (8th Cir. 2020) (same for failure-to-train-or-supervise claims).

To establish a substantive-due-process violation under the Fourteenth Amendment, Frazier must show that Cummings's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Braun*, 983 F.3d at 1002 (quoting *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (en banc)). Courts have held that a defendant does not typically shock the conscience unless he acts with an intent to harm—but, in cases in which "actual deliberation is practical," a defendant's deliberate indifference can also be conscience shocking.  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849–51 (1998).

---

[2]*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

[3]*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

Frazier argues that the deliberate-indifference standard—not the intent-to-harm standard—applies to Cummings's conduct, because the complaint alleges that Cummings did not subjectively believe that he was responding to an emergency when he pursued the Kia. *See Terrell*, 396 F.3d at 979–80 (holding that an intent-to-harm rather than a deliberate-indifference standard applies to vehicular injuries caused by police when officers subjectively believed they were responding to an emergency). In support of her argument, Frazier relies on cases that do not involve high-speed pursuits of suspects. That omission is telling. The Supreme Court and the Eighth Circuit have made clear that when an officer is engaged in a high-speed pursuit of a suspect, the intent-to-harm standard (and not the deliberate-indifference standard) applies *regardless* of the officer's subjective beliefs. *Helseth v. Burch*, 258 F.3d 867, 871 (8th Cir. 2001) (en banc) ("*Lewis* plainly stated that the intent-to-harm standard, rather than the deliberate indifference standard, applies to *all* high-speed police pursuits aimed at apprehending suspected offenders." (original emphasis)); *Lewis*, 523 U.S. at 836 ("[I]n a high-speed automobile chase aimed at apprehending a suspected offender . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience . . . ."). Only when an officer is not

pursuing a suspect—but is instead driving fast for another reason—does it matter whether the officer subjectively believed that he was responding to an emergency.[4]

Here, there is no dispute that Cummings was pursuing a suspect at the time that he crashed into Leneal's car. Indeed, the complaint itself repeatedly alleges that Cummings was engaged in a high-speed pursuit of the Kia. *See, e.g.*, Compl. ¶¶ 67, 73–75 ("Cummings . . . accelerated to follow the KIA."); *id.* ¶ 68 ("Cummings' decision to initiate the pursuit . . . ."); *id.* ¶¶ 88–89 ("Cummings' . . . conduct of initiating and continuing the dangerous, high-speed chase . . . ."). Thus, this Court is required to apply the intent-to-harm standard to Cummings's conduct.

---

[4]*Compare Lewis*, 523 U.S. at 854 (holding intent-to-harm standard applied to suspects' injuries resulting from an officer's high-speed chase of a motorcycle without mention of officer's subjective belief); *Helseth*, 258 F.3d at 871 (holding intent-to-harm standard applied to bystanders' injuries resulting from high-speed chase of intoxicated driver without mention of subjective belief); with *Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 470 (8th Cir. 2010) (applying intent-to-harm standard to bystanders' injuries resulting from officer's driving based on officer's subjective belief that responding to reported muggings in a parking lot was an emergency); *Terrell*, 396 F.3d at 979–80 (applying intent-to-harm standard to bystanders' injuries resulting from officer's driving based on officer's subjective belief that responding to report of domestic disturbance was an emergency); *see also Braun*, 983 F.3d at 1005 (Grasz, J., concurring) ("This is not a case involving a high-speed pursuit of a fleeing suspect. . . . It matters because when an officer is not in pursuit of a fleeing suspect, our precedent requires the district court to engage in an additional step: determining whether the officer subjectively believed he was responding to an 'emergency.'"); *but see id.* at 1004 (Colloton, J., concurring) ("The 'intent-to-harm' standard thus applies to a substantive due process claim both when an officer believes that he is pursuing a suspect and when an officer believes that he is responding to another type of emergency. The suggestion of the [Grasz] concurrence that there is a 'legally significant' distinction between the two types of cases runs counter to *Terrell*." (cleaned up)).

The complaint does not plausibly allege that Cummings intended to harm Leneal or anyone else.[5] Frazier attempts to finesse the intent-to-harm requirement by arguing that it is sufficient for her to allege that the "natural and probable consequences" of Cummings's reckless pursuit of the Kia was injury to the suspect or a bystander. Frazier is mistaken. The sources Frazier cites in support of her argument describe what *evidence* may be considered by a factfinder in determining whether a defendant acted with the intent to harm; they do not hold that the defendant necessarily intends all of the "natural and probable consequences" of his acts. *See, e.g.,* Crim. Model Jury Instr. 8th Cir. § 7.05 (2024) ("You *may, but are not required to, infer* that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted." (emphasis added)).

Indeed, *every* high-speed pursuit of a suspect involves significant risk to the suspect being pursued, the officers doing the pursuing, and the public at large; that is why fleeing a police officer in a motor vehicle is a felony. *See Lewis*, 523 U.S. at 853 ("A

---

[5]It is unclear *who* the officer must intend to harm under the intent-to-harm standard—the suspect being chased, the bystander-victim, or someone else. *Compare Sitzes*, 606 F.3d at 470 ("Because there was no evidence that Officer Wright intended to harm [bystander-victims], the district court correctly granted summary judgment in favor of the defendants."); *with Helseth*, 258 F.3d at 872 (analyzing whether officer intended to harm fleeing suspect rather than bystander-victims); *with Braun*, 983 F.3d at 1003 (finding no evidence that the officer "intended to harm anyone"). The issue does not matter in this case, however, because the complaint does not plausibly allege that Cummings intended to harm *anyone*.

police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders."); *Slusarchuk v. Hoff*, 346 F.3d 1178, 1183 (8th Cir. 2003) (holding a pursuit "'aimed at apprehending a suspected offender' . . . did not objectively evidence 'a purpose to cause harm unrelated to the legitimate object of arrest.'" (quoting *Lewis*, 523 U.S. at 836)). If intent to harm was established by the mere fact that harm is a natural consequence of an officer's high-speed pursuit of a suspect, then a plaintiff would never have to introduce evidence of the officer's intent. That is obviously not the law. In short, in alleging that harm to bystanders was a natural and probable consequence of Cummings's pursuit of the Kia, Frazier has not plausibly alleged that Cummings acted with the intent to harm bystanders (or anyone else).

Cummings's conduct was criminal and had tragic consequences, but substantive due process "is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Lewis*, 523 U.S. at 848 (citation omitted). Frazier has not plausibly alleged that Cummings acted with "a purpose to cause harm unrelated to the legitimate object of arrest," *id.* at 836, and thus Frazier has not pleaded a viable substantive-due-process claim. Without such a claim, Frazier cannot establish that the City is liable under *Monell* or *Canton*.

*C. Race Discrimination*

Frazier also brings equal-protection and Title VI claims based on the alleged racial profiling of suspects in high-speed pursuits. Frazier concedes that she "lack[s] standing to assert a § 1983 equal protection claim based upon . . . racial profiling" of the Kia suspect. *See Slusarchuk*, 346 F.3d at 1182 (holding that bystanders injured in a high-speed pursuit lacked standing to bring an equal-protection claim based on fleeing suspect's race). Nevertheless, Frazier contends that she does have standing to assert an equal-protection claim based upon the alleged racial profiling of the *neighborhoods* in which police conduct high-speed pursuits. The City does not dispute the point, but Article III standing is jurisdictional, and thus this Court has an independent obligation to determine whether it has jurisdiction over Frazier's racial-profiling claim. *United States v. Hays*, 515 U.S. 737, 742 (1995).

To establish standing, a plaintiff must demonstrate that (1) she suffered an injury-in-fact (2) that is fairly traceable to the unlawful conduct of the defendant and (3) that is likely to be redressed by the relief sought. *Duit Constr. Co. v. Bennett*, 796 F.3d 938, 940 (8th Cir. 2015). Frazier has clearly suffered an injury-in-fact, but she has not adequately alleged that her injury is fairly traceable to the alleged racial profiling.

Again, Frazier alleges that the City intentionally engaged in more high-speed pursuits in neighborhoods with a disproportionate number of black residents. There is

no allegation, however, that Leneal *resided* in the disproportionately black neighborhood in which he was killed—or, for that matter, in any other disproportionately black neighborhood. Put differently, the complaint does not allege that Cummings was engaged in a high-speed chase because of *the race of Leneal*; instead, the complaint alleges that Cummings was engaged in a high-speed chase because of *the race of others*—specifically, the race of the residents of the neighborhoods in which the chase took place. Thus, under Frazier's theory, *Leneal* was not deprived of equal protection through the targeting of *his* race; rather, the residents of the neighborhoods in which the high-speed chase took place were deprived of equal protection through the targeting of *their* race.

Frazier's neighborhood-profiling claim is therefore based on an assertion of the equal-protection rights of others—no different from asserting an equal-protection claim based on the equal-protection rights of the Kia suspect (which Frazier concedes she does not have standing to do). For these reasons, Frazier lacks standing to challenge MPD's alleged racial profiling of neighborhoods in deciding whether to engage in high-speed pursuits.

Even if Frazier had standing to bring an equal-protection claim based on the racial profiling of neighborhoods, the Court would dismiss her claim on the merits. Frazier essentially makes a claim of selective investigation or enforcement, which

"should be judged according to ordinary equal protection standards." *Flowers v. City of Minneapolis, Minn.*, 558 F.3d 794, 798 (8th Cir. 2009) (cleaned up).  To state a claim for an equal-protection or Title VI violation, a plaintiff must allege that the challenged conduct had a discriminatory effect and was motivated by a discriminatory purpose.  *Wayte v. United States*, 470 U.S. 598, 608 (1985); *Does 1–2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 580 (8th Cir. 2021) (analyzing equal-protection and Title VI claims together under same standard).  To show a discriminatory effect and purpose (absent direct evidence), Frazier must plausibly allege that similarly situated, non-disproportionately-black neighborhoods were treated differently.  *See Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016).

Frazier fails to do so.  To begin with, although the complaint repeatedly complains of discrimination between "neighborhoods," the complaint does not describe how a "neighborhood" is defined.  Obviously, a court cannot assess the plausibility of an allegation that the people of Neighborhood X were treated differently from the people of Neighborhood Y based on race without knowing the *boundaries* of the two neighborhoods, yet Frazier's complaint fails to identify the boundaries of a single neighborhood within Minneapolis.

The complaint has an even more serious problem.  Again, Frazier's claim is that the MPD engages in high-speed pursuits more frequently in "disproportionately black"

neighborhoods than it does in "predominantly white" neighborhoods, and that MPD does so on account of racial animus. Compl. ¶¶ 212, 236–37, 242. Setting aside the fact that a neighborhood (however that is defined) can be *both* "disproportionately black" *and* "predominantly white," the complaint fails to plead facts establishing that disproportionately black neighborhoods are similarly situated in all relevant respects to predominantly white neighborhoods. For example, if a particular disproportionately black neighborhood has 60% more serious crime than a particular predominantly white neighborhood, the fact that there are 60% more high-speed pursuits in the black neighborhood would raise no inference of race discrimination. Thus, without knowing the boundaries, racial composition, and crime rates of the neighborhoods being compared, the Court has no way to assess the plausibility of the claim that the MPD engages in more high-speed pursuits in black neighborhoods than in white neighborhoods,[6] nor the plausibility of the claim that the MPD does so because of racial animus (rather than because there is simply more crime in black neighborhoods).

For these reasons, Frazier has not plausibly pleaded any equal-protection or Title VI violation, and those claims are dismissed without prejudice.

---

[6]The few high-speed chases identified in the complaint provide little support for the allegation that there is a greater frequency of such chases in disproportionately black neighborhoods. Of the eight high-speed pursuits discussed in the complaint, only four are alleged to have occurred in disproportionately black neighborhoods. *See* Compl. ¶¶ 28–35.

*D.  Wrongful Death*

Because the Court has dismissed the claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Frazier's state-law wrongful-death claim.  28 U.S.C. § 1367(c)(3); *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) (courts should ordinarily decline supplemental jurisdiction when all original-jurisdiction claims have been eliminated before trial).  The wrongful-death claim is therefore dismissed without prejudice.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for judgment on the pleadings [ECF No. 18] is GRANTED.

2. The complaint [ECF No. 1] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 9, 2025                               /s/ Patrick J. Schiltz
                                                   Patrick J. Schiltz, Chief Judge
                                                   United States District Court